# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In Re the Detention of:<br><br>JOHN E. BROOKS,<br><br>        Appellant. | No.  46760-7-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — John E. Brooks, an adjudicated sexually violent predator (SVP), appeals the trial court's grant of summary judgment to the Department of Social and Health Services (DSHS) on his petition for a conditional release to a less restrictive alternative (LRA) placement.  Brooks argues that, once the DSHS evaluator recommended a specific LRA placement, RCW 71.09.090(1) required DSHS to authorize his petition for conditional release, and that, but for DSHS's failure to comply with RCW 71.09.090(1), the trial court would not have granted summary judgment to DSHS.

We hold that (1) the plain language of RCW 71.09.090(1) does not require DSHS to follow an evaluator's recommendation for an LRA that does not meet the five conditions required for conditional release under RCW 71.09.092 and (2) DSHS's application of RCW 71.09.090(1) does not deny Brooks due process.  We further hold that (3) because Brooks's proposed LRA did not meet the secure housing and treatment requirements of RCW 71.09.092, no legally sufficient evidence existed for a reasonable jury to find that Brooks's proposed LRA met all five conditions

required under RCW 71.09.092.  Thus, we affirm the trial court's grant of summary judgment in favor of DSHS.

FACTS

In 2007, after pleading guilty to two sexually violent offenses, Brooks stipulated to civil commitment in the Special Commitment Center (SCC)[1] as an SVP[2] and has since received annual evaluations of his mental condition required for continued commitment as an SVP under RCW 71.09.

I. BROOKS'S 2013 ANNUAL REVIEW AND DR. SAARI'S RECOMMENDATION

In May 2013, Dr. Rob Saari, a licensed psychologist on behalf of DSHS, conducted Brooks's annual review and issued a report.  Dr. Saari's report stated that Brooks still met the criteria of an SVP and, "[Brooks] would be at a very high risk if he were unconditionally released to the community without any imposed structure or mandated sex offender treatment."  Clerk's Papers (CP) at 255.  Dr. Saari also expressed concern about Brooks's lack of transparency and his problem-solving skills.

However, despite his findings and expressed concerns, Dr. Saari opined that Brooks's treatment progress was "sufficient for the Court to consider him for a less restrictive alternative placement at the McNeil Island Secure Transition Facility" (SCTF).[3]  CP at 255.  Dr. Saari further

---

[1] SCC is a "total confinement facility" (RCW 71.09.020(19)) operated by DSHS on McNeil Island. Br. of Resp't at 9, n. 11.

[2] RCW 71.09.020(18).

[3] "Secure Community Transition Facility (SCTF)" in this opinion refers to the McNeil Island Secure Community Transfer Facility.  The actual definition of SCTF is broader.  *See* RCW 71.09.020(15).

expressed that in his "professional opinion [Brooks could] be managed in a less restrictive alternative[4] placement, *like* the [SCTF]" as long as Brooks was not left unsupervised in the community. CP at 256-57 (emphasis added). Dr. Saari never indicated that the SCTF was the only placement for Brooks, nor did he state that the SCTF or any other facility had agreed to accept Brooks based on his opinions and recommendations. Only Dr. Saari's 2013 annual report recommends Brooks's conditional release to the SCTF or another LRA placement.

II. DSHS'S DENIAL OF BROOKS'S REQUEST

On May 8, 2013, the SCC's Senior Clinical Team (Team) reviewed Dr. Saari's report.

The Team is a seven member panel that meets weekly to review resident cases, and reviews annual reports that recommend a change in the SVP's status. Dr. Holly Coryell is a member of the team and the SCC's Clinical Director.

Dr. Coryell stated that as a part of the review process for a recommended status change, the Team gathers information from the SVP's treatment team and other data, and will frequently interview the SVP. Then, based on the information gathered, the SVP interview, and the Team's assessment, Dr. Coryell makes a recommendation to the SCC Chief Executive Officer (SCC CEO), who is the DSHS Secretary's designee.

In May 2013, the Team met to discuss Brooks's proposed status change. During the meeting, the Team discussed Brooks's "recent interpersonal difficulties including his retaliation

---

[4] "Less restrictive alternative (LRA)" means "court-ordered treatment in a setting less restrictive than total confinement which satisfies the conditions set forth in RCW 71.09.092. A less restrictive alternative may not include placement in the community protection program as pursuant to RCW 71A.12.230." RCW 71.09.020(6).

against a peer and his 'eye for an eye' problem solving strategy when he feels wronged." CP at 215. During his interview, Brooks did not express any remorse for his actions or justify his behavior. The Team determined that (1) Brooks was not "clinically ready" for release to the SCTF.

The Team also concluded that it was unlikely that the SCTF could manage Brooks due to his "lack of transparency regarding his interpersonal difficulties, and unwillingness to consider alternative behaviors to the use of retaliation." CP at 216. In August 2013, Brooks became deregulated during a polygraph preassessment, balling his fists and yelling profanities at the examiner. Further, Brooks's treatment team reported that he was making little progress in addressing his interpersonal problems and retaliation response. Brooks's treatment team described him as

> a passive participant who . . . is not demonstrating the minimum level of transparency and willingness to work on his poor interpersonal skills and other treatment issues that is anticipated of residents who are clinically ready for transition to a Secured Community Transition Facility.

CP at 216. As a result of the information gathered and Brooks's interview, the Team disagreed with Saari's recommendation for Brooks's conditional release to the SCTF. Dr. Coryall provided the Team's assessment of Brooks to the SCC CEO (on behalf of DSHS), who determined that Brooks would not be conditionally released to the SCTF.

III. RCW 71.09.090—BROOKS'S PETITION FOR CONDITIONAL RELEASE TO AN LRA

After DSHS denied Brooks's conditional release to the SCTF, Brooks exercised his right to petition the court for a show cause hearing under RCW 71.09.090(2).[5] As provided for in

---

[5] RCW 71.09.090(2)(a) permits the SVP to petition the court "for conditional release to a less restrictive alternative or unconditional discharge without the secretary's approval."

No. 46760-7-II

RCW 71.09.090(2)(a), the trial court set Brooks's show cause hearing in July 2013 to determine whether there was probable cause to have an evidentiary hearing on Brooks's release to the LRA. At the show cause hearing, the State was required, under RCW 71.09.090(2)(b), to show by prima facie evidence that Brooks's proposed LRA was not in his best interests or that he would not be adequately secure in the community.

IV.  COURT HEARINGS

A.  SHOW CAUSE HEARINGS

At Brooks's July 2013 show cause hearing, the trial court ordered the Department of Corrections (DOC) to investigate Brooks's proposed LRA placement and "recommend any additional conditions to the Court,"[6] and set Brooks's show cause hearing for a later date.  CP at 418.

DOC submitted its report to the court on September 13, 2013.[7]  Following DOC's report, at Brooks's December 13, 2013 show cause hearing, the trial court found that Brooks still met the definition of an SVP, and while it was in his best interest to transition to an LRA, that

> [Brooks] has not presented a proposed less restrictive alternative placement meeting the conditions of RCW 71.09.092 as required under RCW 71.09.090(2)(d).

CP at 223.  Further, based on its findings, the trial court concluded,

> DSHS's annual review of [r]espondent's mental condition provides prima facie evidence of the following:

---

[6] RCW 71.09.096(4) requires that prior to any conditional release to an LRA placement, the trial court "shall order the department of corrections to investigate the less restrictive alternative and recommend any additional conditions to the court."

[7] DOC's report concluded that Brooks's proposed LRA did not "appear to meet the requirements outlined under RCW 71.09.092" and, based on its findings, did not recommend Brooks's release to any LRA.  CP at 421.

5

> a. Respondent's condition remains such that he continues to meet the statutory definition of a sexually violent predator.
>
> b. Release to a less restrictive alternative such as the Pierce County Secure Community Transition Facility (SCTF) is in Respondent's best interest and conditions can be imposed at the SCF to adequately protect the community.

Under RCW 71.09.090(2)(d), the Court may not find probable cause for a trial addressing less restrictive alternatives unless a proposed less restrictive alternative placement plan meeting the conditions of RCW 71.09.092 is presented to the Court at the show cause hearing.

CP at 223. The trial court then ordered that Brooks remain in DSHS's custody, and denied an evidentiary hearing on the LRA issue.

Brooks then filed a motion for discretionary review with this court, arguing that, based on the trial court's findings and conclusions, the trial court erred when it denied Brooks an evidentiary hearing on the LRA. The State conceded the error. Our commissioner denied Brooks's motion for discretionary review; and we denied Brooks's motion to modify the commissioner's ruling.

On May 30, 2014, through a number of procedural means, and on motion by the State, the trial court vacated its December 13, 2013 order denying the evidentiary hearing on the LRA issue. In its unchallenged findings of fact, the trial court again found that Brooks still met the definition of an SVP, that it would be in his best interest to transition to an LRA, "such as the [SCTF]," and that

> Respondent has not presented a proposed less restrictive alternative placement meeting the conditions of RCW 71.09.092 as required under RCW 71.09.090(2)(d).

CP at 378. Based on its findings of fact, the trial court concluded,

> DSHS's annual review of Respondent's mental condition provides prima facie evidence of the following:
>
> > a. Respondent's condition remains such that he continues to meet the statutory definition of a sexually violent predator.

b. Release to a less restrictive alternative such as the Pierce County Secure Community Transition Facility (SCTF) is in Respondent's best interests and conditions can be imposed at the SCTF to adequately protect the community.

Respondent has not presented a proposed less restrictive alternative placement to the court.

CP at 378. The trial court then ordered an evidentiary hearing on Brooks's LRA placement.

B. SUMMARY JUDGMENT HEARING

On August 1, 2014, before Brooks's evidentiary hearing, the State moved for summary judgment. The State requested that the trial court dismiss Brooks's petition and strike the upcoming trial date, arguing that Brooks failed to meet the requirements of RCW 71.09.092 because he had failed to identify either "a specific course of treatment [or] authorized housing" and did not have a written agreement from any person or agency agreeing to house him. CP at 381.

Brooks's response did not include a specific proposed LRA plan or any evidence of a written agreement; instead, he asserted, "There has never been any confusion about what housing location [he] has been proposing," and offered no evidence to show that he had actually secured LRA housing. CP at 486. Brooks relied exclusively on Dr. Saari's recommendation.

After hearing argument on September 5 and considering the pleadings and evidence, the trial court granted the State's summary judgment motion, stating, "I have no evidence before me that there is a provider, any provider, that has signed an agreement to provide housing at the SCTF or anywhere else for Mr. Brooks." Verbatim Report of Proceedings (VRP) (9/5/2015) at 22. The trial court denied Brooks's motion for reconsideration. Brooks appeals.

No. 46760-7-II

ANALYSIS

I.  RCW 71.09.090(1)

Brooks argues that RCW 71.09.090(1) requires DSHS to authorize his petition for conditional release to the SCTF as an LRA, and that DSHS failed to comply with the statute. Brooks also argues that DSHS's current application of the statute permits total confinement in all situations, and denies him due process. We disagree.

A.  STATUTORY INTERPRETATION – PLAIN MEANING

When construing a statute, we must give effect to the legislature's intent and purpose. *In re Detention of Jones*, 149 Wn. App. 16, 24, 201 P.3d 1066 (2009). When a statute is unambiguous, we derive that intent and meaning from the statute's plain language. *Jones*, 149 Wn. App at 24.

RCW 71.09.090(1) provides, in relevant part,

> (1) *If the secretary determines* that the person's condition has so changed that either: (a) The person no longer meets the definition of a sexually violent predator; or (b) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, the secretary shall authorize the person to petition the court for conditional release to a less restrictive alternative or unconditional discharge.

RCW 71.09.090(1)(emphasis added).

Brooks argues that RCW 71.09.090(1) obligates the Secretary to authorize a petition for conditional release to an LRA placement once the evaluating psychologist, who conducts the annual review of the SVP, supports an LRA placement. We disagree because neither the plain language of the statute nor the case law support Brooks's argument.

8

Under the plain language of the statute, the Secretary determines whether the SVP's condition has changed or whether the LRA placement is in the SVP's best interest and whether the placement facility who agrees to accept the SVP can "adequately protect the community." RCW 71.09.090(1). If the Secretary determines that an LRA placement is not in the SVP's best interests or will not adequately protect the community, the statute does not obligate DSHS to authorize an SVP to petition for conditional release. The statute does not address what the Secretary must specifically consider when making its determination. *See* RCW 71.09.090(1). We reject Brooks's request to add language into RCW 71.09.090(1).

Brooks also cites *State v. McCuistion*, 174 Wn.2d 369, 275 P.3d 1092 (2012), but misreads the holding. In *McCuistion*, our Supreme Court held that the State must present a prima facie case to justify continued incarceration as an SVP, not that the Secretary has to adopt the evaluating psychologist's opinion regarding such an LRA placement. 174 Wn.2d at 388-89.

B. CONSTITUTIONAL CHALLENGE

Brooks argues that RCW 71.09.090(1) creates a protected liberty interest under due process to a conditional release and LRA placement of his choosing. We disagree.

Constitutional questions are questions of law that we review de novo. *McCuistion*, 174 Wn.2d at 387. We presume that a statute is constitutional, and the burden is on the party challenging the statute to prove that it is unconstitutional beyond a reasonable doubt. *In re Det. of Bergen*, 146 Wn. App. 515, 524, 195 P.3d 529 (2008).

Because civil commitment involves the deprivation of liberty, it must meet the demands of substantive due process. *McCuistion*, 174 Wn.2d at 387. "Substantive due process requires only that the State conduct periodic review of the [SVP's] suitability for release." *McCuistion*, 174 Wn.2d at 385 (citing *Jones v. United States*, 463 U.S. 354, 368, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983)). The SVP commitment scheme meets the demands of due process. *McCuistion*, 174 Wn.2d at 388 (citing *In re Pers. Restraint of Young*, 122 Wn.2d 1, 26, 39, 857 P.2d 989 (1993)).

"[T]he due process clause does not create a liberty interest when an SVP seeks release before the court has determined that he or she is no longer likely to reoffend or that he or she is entitled to conditional release to an LRA." *Bergen*, 146 Wn. App at 525. "Subjective appraisals" do not create a substantive liberty interest in whether an SVP is entitled to release to an LRA placement. *See Bergen*, 146 Wn. App. at 526-27 (stating that the SVP statute provides the SVP a procedure to petition for a show cause hearing, and a path to a jury determination that they are no longer an SVP, requiring the State to "affirmatively defeat" the LRA by proof beyond a reasonable doubt).

Here, the evaluating psychologist's "subjective appraisal" that Brooks is ready for a conditional release to the SCTF, without the Secretary's determinations that this placement is in Brooks's best interest or the community's, and without the SCTF's agreement to accept Brooks for placement and treatment does not create a constitutionally protected liberty interest. Brooks fails to show that RCW 71.09.090(1), or that DSHS's application of the statute here, is unconstitutional beyond a reasonable doubt. Further, Brooks still has the ability to petition the court for release to an LRA placement, protecting his procedural due process rights. RCW 71.09.090(2)(a). Therefore, Brooks's due process claim fails.

10

II. SUMMARY JUDGMENT

Brooks argues that, but for DSHS's failure to comply with RCW 71.09.090(1), the trial court would not have granted summary judgment. We disagree.

We review summary judgment orders de novo. *Greenhalgh v. Dept. of Corrections*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). Summary judgment is appropriate only, when based on the entire record before the court, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing a trial court's grant of summary judgment, we consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Greenhalgh*, 160 Wn. App. at 714.

RCW 71.09.090(2)(a) permits the SVP to petition the court "for conditional release to a less restrictive alternative or unconditional discharge without the secretary's approval," the court must then set a show cause hearing to determine whether there is probable cause to have an evidentiary hearing. RCW 71.09.090(2)(a). At the show cause hearing, the State must present prima facie evidence establishing that the person still meets the definition of an SVP or that release to an LRA is not in the person's best interest or will not provide adequate protection to the community. RCW 71.09.090(2)(b). The court may not find probable cause for a trial addressing less restrictive alternatives unless the respondent's proposed LRA placement meets the conditions required under RCW 71.09.092. RCW 71.09.090(2)(d).

Both RCW 71.09.092 and .094(1) require that the State produce evidence beyond a reasonable doubt to overcome an SVP's conditional release to an LRA. *In re Det. of Skinner*, 122 Wn. App. 620, 627-28, 94 P.3d 981 (2004). RCW 71.09.092 imposes five conditions for an SVP's conditional release to an LRA. Two of those conditions require (1) that there is a specific course of treatment and the treatment provider agrees and assumes responsibility for the treatment and (2) that sufficiently secure housing exists in Washington, and the housing provider has *agreed in writing* to accept the person. RCW 71.09.092(2-3). The court may grant the State's summary judgment motion if it finds that there is "no legally sufficient evidentiary basis for a reasonable jury to find that the conditions set forth in RCW 71.09.092 have been met." RCW 71.09.094(1).

Here, the State presented undisputed evidence that there was no written agreement from any person or institution, including the SCTF, to accept Brooks into alternative housing. Brooks never presented a proposed LRA that met the conditions required under RCW 71.09.092, specifically, that he had written acceptance into the SCTF or any other facility.

Drawing the evidence and inferences in the light most favorable to Brooks, there is no evidence of a written acceptance or agreement from any treatment provider to house Brooks in an LRA. Therefore, there is no legally sufficient evidence to create a genuine issue of material fact from which a reasonable jury could conclude that Brooks's proposed LRA placement met all five conditions required under RCW 71.09.092. Thus, we hold that the trial court properly granted summary judgment to DSHS under RCW 71.09.094.

No. 46760-7-II

CONCLUSION

We hold that (1) RCW 71.09.090(1)'s plain language does not require DSHS to follow an evaluator's recommendation for conditional release to a particular LRA that does not meet the statutory requirements of RCW 71.09.092 and (2) DSHS's application of RCW 71.09.090(1) does not deny an SVP due process. We further hold that (3) summary judgment was proper because no reasonable jury would conclude from the evidence that Brooks's proposed LRA met all five conditions required under RCW 71.09.092. Thus, we affirm the trial court's grant of summary judgment in favor of DSHS.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.

13