
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| IN RE DETENTION OF BRADLEY WARD | ) ) ) | No. 73535-7-I |
| STATE OF WASHINGTON, | ) ) ) | DIVISION ONE |
| Petitioner, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| BRADLEY WARD, | ) ) | |
| Respondent. | ) ) | FILED: <u>August 22, 2016</u> |

SPEARMAN, J. — In a proceeding brought under the Sexually Violent Predator Act (SVPA), chapter 71.09 RCW, a trial court's authority is limited to that found in the statute. Once a person is found to be a sexually violent predator, the statute only provides for release upon a showing that the person's mental condition has so changed that he or she no longer meets the definition of a sexually violent predator. In this case, the trial court determined it had authority to unconditionally release Ward from the Special Commitment Center (SCC), without him making this showing, if it found his constitutional and statutory rights to adequate care were being violated. Because nothing in the SVPA authorizes a trial court to unconditionally release a sexually violent person on these grounds, we reverse.

FACTS

Background facts concerning Ward's commitment were set out by this court in In re Det. of Ward, 2015 WL 4232058 (July 13, 2015). Ward stipulated to commitment as a sexually violent predator in 1991. Ward was housed at the Special Commitment Center (SCC), a secure facility on McNeil Island operated by the Department of Social and Health Services (DSHS). Ward's behavior improved and in 2007 the parties agreed to his conditional release to the Secure Community Transition Facility (SCTF), a less restrictive alternative (LRA) facility also located on McNeil Island. For several years, Ward made good progress while housed at the SCTF and was assessed as a low risk to reoffend.

In 2012, Ward began experiencing psychotic symptoms and his behavior deteriorated. He was moved between the SCTF and the SCC several times. In 2014, the State filed a motion to revoke Ward's LRA status pursuant to RCW 71.09.098. The trial court denied the motion and ordered Ward returned to the SCTF. This court affirmed the decision.

While the State's appeal was pending, Ward filed a motion "to dismiss his commitment under RCW 71.09." Clerk's Papers (CP) at 85. Ward brought his motion "on the basis of RCW 71.09.080(3)" which states that a person committed under the SVPA has a right to receive adequate care. Id. However, he made no argument concerning that statute. Instead, Ward argued that because the SCC did not provide him with treatment that gave him a realistic opportunity for improvement, his confinement violated the due process clause of the Fourteenth

2

Amendment to the U.S. Constitution. Ward asked the court to "order him released from the [SCC]" and order him detained for evaluation at a mental health facility. CP at 85.

The trial court denied Ward's motion to dismiss for insufficient evidence but granted an evidentiary hearing on the merits of the motion.[1] The trial court concluded that it had jurisdiction to hear Ward's motion and to unconditionally release Ward if he established that continued involuntary commitment violated his statutory or constitutional rights. The trial court also concluded that DSHS was not an indispensable party to the action.

The State moved for discretionary review and a stay of the evidentiary hearing. Commissioner's Ruling at 4. The State argued that the trial court erred in granting a hearing on Ward's motion because the trial court's authority in an SVPA hearing is limited by statute and the court does not have authority to grant the relief Ward seeks.

We granted interlocutory review on the question of whether the hearing was properly ordered.

<u>DISCUSSION</u>

Whether the trial court properly ordered a hearing on Ward's motion to

---

[1] The trial court also ordered an unconditional release hearing pursuant to RCW 71.09.090 to determine whether Ward continues to meet the statutory definition of a sexually violent predator. The unconditional release hearing is pending and is unaffected by this appeal.

dismiss under the SVPA is a question of law that we review de novo.[2] State v. Drum, 168 Wn.2d 23, 31, 225 P.3d 237 (2010).

The SVPA defines a sexually violent predator as a person who has committed a sexually violent crime and who suffers from a mental abnormality or personality disorder that makes him or her likely to engage in predatory acts of sexual violence if not confined. RCW 71.09.020(18). Once a person has been judicially determined to meet this definition, the statute requires the person to be committed to the custody of DSHS for placement in a secure facility. RCW 71.09.060(1). The commitment is indefinite and lasts as long as the detained person remains mentally ill and dangerous. In re Det. of Rushton, 190 Wn. App. 358, 368, 359 P.3d 935 (2015).

The SVPA's only provisions for unconditional release are in RCW 71.09.090(1)(2). Under those sections, a detainee may be unconditionally released only upon a finding that he or she no longer meets the statutory definition of a sexually violent predator. Rushton, 190 Wn. App. at 375. In addition, the SVPA mandates that a sexually violent predator be housed in a "secure facility" and specifically prohibits housing a sexually violent person "in a

---

[2] We reject Ward's argument that the State failed to properly assign error to the trial court's order and that we should exercise our discretion under RAP 10.7 to consider the issue as waived. The State's brief adequately identifies the issue and Ward's briefing responds to that issue. We also reject Ward's assertion that the State's factual argument is not properly before this court because the State's citations to the record are confusing and erroneous. While some of the State's citations to the record are erroneous, the erroneous citations concern the factual background of the case, which is irrelevant to the issue on appeal.

facility on the grounds of any state mental facility ... because these institutions are insufficiently secure for this population." RCW 71.09.060(3).

The State argues that these statutory mandates preclude the court from granting the relief Ward seeks. We agree.[3]

In a proceeding under the SVPA, "[a] trial court's authority is limited to that found in the statute. . . ." In re Det. of Skinner, 122 Wn. App. 620, 632, 94 P.3d 981 (2004) (citing State v. Phelps, 113 Wn. App. 347, 354-55, 57 P.3d 624 (2002)). In re Det. of Turay, 139 Wn.2d 379, 986 P.2d 790 (1999) is instructive. In that case, our Supreme Court considered the role of the trial court in an SVPA hearing and the remedy for unconstitutional conditions of confinement. In a commitment hearing under the SVPA, the trial court's role is limited to determining whether the defendant meets the statutory definition of a sexually violent predator. Id. at 404. Conditions of confinement are not relevant to this determination. Id. Furthermore, even if a detainee establishes that conditions are unconstitutional, release from confinement is not an available remedy. Turay, 139 Wn.2d at 420. The remedy for unconstitutional conditions of confinement is an injunction or an award of damages.[4] Id.

---

[3] The State argued below that the proper avenue for Ward to challenge the conditions of his confinement is through a personal restraint petition or an action under 42 U.S.C. § 1983. We express no opinion on whether Ward's options are limited as the State suggests.

[4] Separate from his other causes of action, the detainee in Turay challenged the conditions of his confinement under 42 U.S.C. § 1983. Id. at 385-86. A federal court found that the SCC violated Turay's constitutional right to adequate mental health treatment and placed the SCC under an injunction to remedy the violation. Id.

Ward argues that Turay is inapposite because it concerns the trial court's role in a commitment hearing, not in subsequent hearings. But he provides no support for the proposition that the SVPA grants a trial court additional authority in proceedings subsequent to the original commitment. Instead, Ward relies on a number of federal cases to argue that civil commitment must meet due process requirements. See, e.g., Trueblood v. Washington State Dep't of Soc. & Health Servs., 101 F. Supp. 3d 1010, 1020 (W.D. Wash. 2015), vacated and remanded, 822 F.3d 1037 (9th Cir. 2016); Oregon Advocacy Ctr v. Mink, 322 F.3d 1101 (9th Cir. 2003); Ohlinger v. Watson, 652 F.2d 775 (9th Cir. 1981)). In each of these cases, the petitioner challenged the conditions of confinement in separate proceedings and sought an injunction or damages. There is no dispute that Ward could proceed in a similar fashion, but that is neither the procedure he chose nor the relief he seeks. Ward cites no authority for his claim that based on the alleged due process violation, he may obtain unconditional release or to be detained in a place other than a secure detention facility.

Ward also relies on In re Detention of D.W., 181 Wn.2d 201, 332 P.3d 423 (2014), for the proposition that a trial court has authority to consider the conditions of confinement even when a person has been lawfully committed. But in that case, the primary issue was whether persons detained under the Involuntary Treatment Act (ITA), chapter 71.05 RCW, were lawfully placed in hospital emergency rooms. Id. at 204. Under the ITA, a county may briefly detain a person with a mental disorder who presents an imminent risk of harm to himself

or to others. Id. The statute requires that such persons be placed in statutorily defined "certified evaluation and treatment facilities." Id. Nonetheless, because of overcrowding in certified mental health facilities, Pierce County frequently placed detainees in hospital emergency rooms utilizing a practice known as "single bed certifications." Id. The trial court concluded the practice was unlawful and dismissed several of the county's petitions for involuntary detention. On appeal, the Supreme Court affirmed, holding that while the ITA authorized single bed certifications in some circumstances, the practice was not permitted as "a method to avoid overcrowding certified evaluation and treatment facilities." Id. at 211.

D.W. is of no help to Ward because it concerns an issue not in dispute here, whether the place of detention was properly authorized by statute. In addition, D.W. concerns a separate statutory scheme, it does not address the SVPA, hearings authorized under the SVPA, or relief available to a person committed as a sexually violent predator if conditions are found to be unconstitutional. The case also undercuts Ward's claim that upon release he could be detained in a state mental health facility. D.W. holds that placement in a facility other than that authorized by statute is not permitted. The SVPA specifically prohibits a sexually violent person from being held "on the grounds of any state mental facility. . . ." RCW 71.09.060(3). Thus, under D.W., the statute forecloses any possibility that the court could grant this aspect of his request.

7

Under the SVPA, Ward may neither be released from confinement, nor housed in a mental health facility unless the State fails to prove that he still meets the definition of a sexually violent predator.[5] Accordingly, we conclude the trial court erred in granting Ward an evidentiary hearing on whether he should be unconditionally released based on the adequacy of his mental health treatment. In light of our disposition of this case, we do not reach the State's argument that DSHS is a necessary party to any action challenging conditions of confinement at the SCC.

Reversed.

WE CONCUR:

---

[5] Ward asserts that other committed persons have been transferred from the SCC to a mental health facility. He provides few details, but the transfers he refers to appear to concern individuals who were released from commitment because they no longer met the criteria for detention under the SVPA, but who met the statutory criteria for evaluation under the ITA.